# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL F. SAMAAN, M.D.,<br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE<br>COMPANY, et al.,<br>Defendants. | No. 2:17-cv-01690-DSF-AGR<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW RE<br>UNPAID CLAIMS |

## I.   INTRODUCTION

The parties agreed to trifurcate this matter.  On January 14, 2019, the Court issued an Order re Standing, Exhaustion of Administrative Remedies, and Contractual Limitations.  Dkt. 43. In this second phase, the parties ask the Court to decide whether Plaintiff is entitled to benefits for certain unpaid claims.  The Court deemed this matter appropriate for decision without oral argument and took the matter under submission on August 1, 2019.

Having reviewed and considered the parties' briefs and the administrative record, the Court makes the following Findings of Fact and Conclusions of Law.

## II. BACKGROUND

Plaintiff is a medical doctor. Dkt. 53-1 (Samaan Dec.) ¶ 1. This phase involves healthcare services Plaintiff provided to ten different patients. Dkt. 53-3.[1] The parties agree that each patient was a beneficiary of the Bank of America Plan (Plan), as described in the 2013 and 2016 Summary Plan Descriptions, and that Defendants were the claims administrators of the Plan. Dkt. 25 ("FAC") ¶ 5; Dkt. 53 at 2; Dkt. 60 at 5-6. Plaintiff seeks recovery of unpaid benefits for 43 claim events[2] involving the patients pursuant to the Plan. See FAC ¶¶ 40-41; Dkt. 53-3. The parties agree that the Plan is governed by the Employee Retirement and Income Security Act of 1974 (ERISA). FAC ¶¶ 40-41; Dkt. 60 at 10.

## III. FINDINGS OF FACT

### A. Terms of the Plan

1.     The Plan "applies to current U.S.-based employees" of Bank of America Corporation. AR 2306 (2013 Plan), 2582 (2016 Plan).

2.     The Plan covers services for "medically necessary care," as described in relevant part below:

---

[1] Plaintiff lists 11 different patient identifiers in his list of unpaid claims. Id. However, Patient X and Patient AE are the same patient. See id.; Supplemental Admin. Record at 162.

[2] Plaintiff lists 45 claim events in his list of unpaid claims. Dkt. 53-3. However, Plaintiff states in his Amended Complaint that he is no longer seeking to recover benefits for services provided during one of the claim events. FAC at 9 n.1. Plaintiff also lists the October 25, 2016 claim event for Patient X/AE twice. Dkt. 53-3 at 2-3.

> Unless otherwise noted the Plan[] cover[s] certain services and supplies for medically necessary care including:
>
> - Specialty and outpatient care
>
> - Inpatient Services
>
> - Surgical benefits

Id. at 2372 (2013 Plan), 2628 (2016 Plan).

    3.    The Plan covers certain surgical services, as described in relevant part below:

> **Surgical Benefits**
>
> Unless otherwise noted, the Plan[] cover[s] the following surgical services:
>
> - Surgical benefits cover surgery performed to treat an illness or injury; medical services by surgeons [Medical Doctors (MD) or Doctors of Osteopathy (DO)], assistant surgeons, anesthesiologists, consultants (during and after an operation and any required second opinions); and medical services of podiatrists.
>
>   . . .
>
> - Surgical services include:
>
>   o A cutting procedure (except for cutting procedures of the mouth that are considered dental expenses . . . .)

      o  Suturing

    . . .

      o  Preoperative and postoperative care

Id. at 2374 (2013 Plan).[3]

    4.    The Plan does not cover services that Defendants deem not medically necessary, as described in relevant part below:

> Unless otherwise noted the Plan[] do[es] not cover certain services, procedures and equipment, including:
>
> . . .
>
> - Experimental, investigational and unproven services and procedures; ineffective surgical, medical psychiatric or dental treatments or procedures; research studies; or other experimental, investigational or unproven health care procedures or pharmacological regimes, as determined by [Defendants], unless approved by [Defendants].
>
> - Services that are **not** medically necessary as determined by [Defendants].

---

[3] The 2016 Plan contains substantially similar language. Id. at 2633. The Court does not find any relevant differences between the plans.

<u>Id.</u> at 2379-80 (2013 Plan).[4]

    5.    The Plan defines "medical necessity" as follows:

> Medical necessity or medically necessary refers to services or supplies provided by hospital, physician, practitioner or other provider that are determined by [Defendants] to be:
>
> -  Consistent with broadly accepted medical standards in the United States as essential to the evaluation and treatment of disease or injury and professionally recognized as effective, appropriate and essential based on recognized standards of the health care specialty
>
> -  Not furnished primarily for the convenience of the patient, the attending physician or other provider
>
> -  Furnished at the most appropriate level that can be provided safely and effectively to the patient
>
> -  Likely to produce significant positive outcome, and no more likely to produce negative outcome than any alternative service or supplies, as it relates to both the disease or injury involved and your overall health condition

---

[4] Again, the 2016 Plan contains substantially language, and the Court finds no relevant differences between the plans. <u>Id.</u> at 2642-43, 2645.

- Not more costly than an alternative
  service or sequence of services at least as
  likely to produce equivalent therapeutic
  or diagnostic results as to the diagnosis
  or treatment of that patient's illness,
  injury or disease

Id. at 2386 (2013 Plan) (internal footnote omitted), 2659 (2016 Plan).

6.    Pursuant to the Plan, an out-of-network provider may not recover more than the "reasonable and customary" fee for a service, as described in relevant part below:

**Reasonable and customary (R&C)**

Reasonable and customary (R&C) fees are
those set each year by your medical plan as
the fees that most doctors in a geographic
area charge for particular services or
procedures.  R&C is based on available data
resources of competitive fees in that
geographic area.

. . .

If your doctor is out-of-network and charges
more than the R&C fee, the Plan will not
pay for the amount in excess of the R&C
level.  You are responsible for paying this
difference if you are not using an in-network
physician.

Id. at 2389 (2013 Plan).

**Reasonable and customary** – A
reasonable and customary fee is the amount

of money that [Defendant] determines is the normal, or acceptable, range of payment for specific health-related service or medical procedure. Reasonable and customary fees operate within given geographic areas and the exact numbers of such fees depend on the location of service.

. . .

If your doctor is out of network and charges more than the allowed amount fee, the plan won't pay for any amount above the allowed amount. You're responsible for paying this difference which is shown on the explanation of benefits (E0B) you receive from your medical plan.

Id. at 2620 (2016 Plan).

7.     The Plan contains the following clause granting Defendants discretion in making claims determinations:

The Bank of America Corporation Corporate Benefits Committee, as plan administrator, has delegated to . . . insurance companies or other third-party claims administrators discretionary authority to determine eligibility for benefits and construe the terms of the applicable component plan and resolve all questions relating to claims for benefits under the component plan.

Id. at 2493 (2013 Plan), 2797 (2016 Plan).

## B. The Component Plans that Govern Plaintiff's Claims for Benefits Are Self-Funded

8. The Plan documents provided by the parties govern multiple component plans. AR 2306 (2013 Plan), 2582 (2016 Plan).

9. Defendants are the claims administrators for some, but not all, of the component plans. Id. at 2496-98 (2013 Plan), 2789-92 (2016 Plan).

10. Among the component plans for which Defendants are the claims administrators, some, but not all, provide healthcare benefits. Id.[5]

11. Plaintiff seeks to recover benefits pursuant only to component plans where both (1) Defendants are the claims administrators, and (2) the plan provides healthcare benefits. FAC ¶¶ 39-41. Each of the component plans that match this description is "[n]ot insured." AR 2496 (2013 Plan), 2789 (2016 Plan). The "company and employees share costs based on actuarial determination," and "the employee portion" is pretax. Id.

12. In light of the foregoing, each of the component plans at issue is self-funded.

---

[5] The other component plans for which Defendants are the claims administrators provide "dental benefits," "vision benefits," "life insurance," "accident insurance," "disability income," or "counseling and referral services." Id. at 2497-98 (2013 Plan), 2791-92 (2016 Plan). Plaintiff does not seek to recover benefits for providing any of these services.

## C.  Plaintiff

13.    Plaintiff Adel F. Samaan is a medical doctor practicing in Los Angeles County, whose primary practice area is gynecological surgery.  Samaan Dec. ¶ 1.

14.    Plaintiff is an out-of-network provider under the Plan. FAC ¶ 11.

## D.  Dr. James Krominga

15.    Dr. James Krominga submitted a declaration in support of Defendants' claims decisions.  Dkt. 60-2 ("Krominga Dec.").  Dr. Krominga graduated from medical school in 1977, completed a family practice residency in 1980, and received board certification in family medicine in 1980.  Dr. Krominga's board certification is current.  Id. ¶ 2.

16.    Dr. Krominga has been Defendant Aetna Life Insurance Company's Senior Medical Director for the Southwest Markets for the past eight years.  Id. ¶ 1.  As Senior Medical Director, he is responsible for oversight of medical policy implementation, and participates in the development, implementation, and evaluation of clinical/medical programs.  Id.

17.    Dr. Krominga is a fellow of the American Academy of Family Physicians, and also belongs to the Arizona Academy of Family Physicians and the Arizona Medical Association.  Id.

## E.  Assignments of Benefits

18.    Plaintiff states that he "received a written assignment of benefits in connection with" each of the unpaid claims at issue. Samaan Dec. ¶ 3.

19.    Plaintiff provided a copy of a written assignment for seven of the ten patients at issue:

- Patient A, Supplemental Admin. Record (SAR) 50[6];

- Patient K, AR at 1495;

- Patient T, <u>id</u>. at 7965, 7966, 8004;

- Patient X/AE, <u>id</u>. at 1872;

- Patient Z, <u>id</u>. 1095, 1096; SAR 1771;

- Patient AA, AR 726, 727; and

- Patient DD, <u>id</u>. at 1101-03; SAR 222.

20.    Plaintiff did not provide a copy of a written assignment for the following three patients: Patient LL, Patient AK, Patient AR.

---

[6] Patient A's written assignment is included in the Supplemental Administrative Record and contains a SAMAANAETNA Bates Designation. In reviewing Defendants' claims determinations, the Court will not consider documents containing a SAMAANAETNA designation for the reasons stated in this order. <u>See</u> Conclusions of Law 24-28. But whether Plaintiff received an assignment of benefits, and therefore has standing to pursue the claim of a patient, is a preliminary issue distinct from the court's review of Defendants' claims determinations. Therefore, the Court will consider documents containing the SAMAANAETNA designation for purposes of determining whether Plaintiff received an assignment of benefits.

**F.    Defendants' Denials of Plaintiff's Claims for Benefits[7]**

> ## 1) Defendants' Grounds for Denying Plaintiff's Claims Are Stated in Documents Entitled Explanation of Benefits and ATV Service Offering Engagements

21.    The administrative record contains documents entitled Explanation of Benefits (EOB) for each of the claim events at issue.  The EOB states Defendants' grounds for denying Plaintiff's claim.  <u>See generally</u> AR.

22.    The administrative record contains documents entitled ATV Service Offering Engagements, which reference many of Plaintiff's claim events. The ATV Service Offering Engagements provide further explanation for Defendants' claims determinations.  <u>See generally</u> AR.

> ## 2) Defendants Denied Several of Plaintiff's Claims on the Grounds that the Services Were Not Performed Based on the Information Defendants Received

23.    For the following 27 claim events, Defendants denied Plaintiff's claims on the grounds that, "based on the information received, the[] services were not provided":

- Patient A (date of service ("DOS"): 1/3/2015), AR 501;

- Patient A (DOS: 1/19/2015), <u>id.</u> at 501, 547-48;

- Patient A (DOS: 2/10/2015), <u>id.</u> at 551;

- Patient A (DOS: 2/23/2015), <u>id.</u> at 554-55;

---

[7] Because Plaintiff fails to show he has standing to recover benefits for services provided to Patients LL, AK, and AR, <u>see</u> Conclusions of Law 3-7, the Court does not address Defendants' claims determinations involving those patients.

- Patient A (DOS: 4/4/2015), id. at 570;

- Patient A (DOS: 7/3/2015), id. at 619-20;

- Patient A (DOS: 7/6/2015), id. at 643;

- Patient A (DOS: 7/16/2015), id. at 546;

- Patient A (DOS: 7/30/2015), id. at 676;

- Patient A (DOS: 9/16/2015), id. at 685;

- Patient T (DOS: 4/24/2015), id. at 7282;

- Patient T (DOS: 5/15/1015), id. at 7287;

- Patient T (DOS: 6/2/2015), id. at 7283[8];

- Patient T (DOS: 11/14/2015), id. at 8979;

- Patient X/AE (DOS: 3/26/2015), id. at 1961;

- Patient X/AE (DOS: 4/25/2015), id. at 1961, 1966;

- Patient X/AE (DOS: 6/26/2015), id. at 1966-67;

- Patient X/AE (DOS: 7/10/2015), id. at 2018;

- Patient X/AE (DOS: 7/27/2015), id. at 8980-81;

- Patient X/AE (DOS: 8/4/2015). id. at 2065;

- Patient X/AE (DOS: 8/18/2015), id. at 8356;

- Patient Z (DOS: 8/6/2015), id. at 1052;

---

[8] Defendants only denied some of Plaintiff's claims for services provided to Patient T on June 2, 2015 on the grounds that the services were not performed based on the information received. The remaining claim was denied on the grounds that the service was not medically necessary. Id.; see also Finding of Fact 53.

- Patient Z (DOS: 11/26/2015), id. at 1075;

- Patient AA (DOS: 10/2/2015), id. at 8635;

- Patient DD (DOS: 12/8/2015), id. at 1160;

- Patient DD (DOS: 12/19/2015), id.; and

- Patient DD (DOS: 2/13/2016), id. at 1246.[9]

### a. **For Some of the Claim Events, There Is No Evidence that Plaintiff Provided Medical Documentation to Defendants Supporting the Claim During the Claims Administration Process**

24.     For ten of the 27 claim events referenced in paragraph 23, there is no evidence that Plaintiff submitted to Defendants medical documents supporting the claim during the claims administration process:

- Patient A (DOS: 1/3/2015);

- Patient A (DOS: 1/19/2015);

- Patient A (DOS: 2/10/2015);

- Patient A (DOS: 2/23/2015);

- Patient A (DOS: 7/30/2015);

- Patient A (DOS: 9/16/2015);

---

[9] Plaintiff submitted three claims for services provided to Patient DD during the February 13, 2016 claim event.  Id.  For two of these claims, Defendants paid a portion of the claim, which the parties do not address.  Id.  Because Plaintiff seeks to recover unpaid, but not underpaid, benefits during this phase of the action, the Court will not consider the two claims which Defendants paid in part in this Order.  See Conclusion of Law 56.

- Patient T (DOS: 4/24/2015);

- Patient T (DOS: 5/15/1015);

- Patient T (DOS: 6/2/2015); and

- Patient X/AE (DOS: 8/18/2015).

25.     For three of these ten claim events, Plaintiff does not cite to any medical documentation supporting the claim:

- Patient A (DOS: 2/10/2015);

- Patient T (DOS: 4/24/2015); and

- Patient T (DOS: 6/2/2015).

26.     For seven of these ten claim events, Plaintiff cites only to medical documentation containing the Bates designation SAMAANAETNA:

- Patient A (DOS: 1/3/2015), SAR 38;

- Patient A (DOS: 1/19/2015), SAR 39;

- Patient A (DOS: 2/23/2015), SAR 40;

- Patient A (DOS: 7/30/2015), SAR 46;

- Patient A (DOS: 9/16/2015), SAR 47;

- Patient T (DOS: 5/15/1015), SAR 87; and

- Patient X (DOS: 8/18/2015), SAR 150.

27.     Plaintiff states in his briefing that the documents with the SAMAANAETNA designation are "from the parties' earlier exchange of documents in this action."  Dkt. 53 at 3.  Plaintiff did not provide evidence showing that Defendants received these documents during the claims administration process, before Plaintiff filed this action.

### b. **For Some of Plaintiff's Claims, Plaintiff Provided Medical Documentation Purportedly Supporting the Claim**

28.    For 17 of the 27 claim events referenced in paragraph 22, Plaintiff submitted to Defendants medical documentation purportedly supporting the claims during the claims administration process:

- Patient A (DOS: 4/4/2015), AR 577,

- Patient A (DOS: 7/3/2015), id. at 632;

- Patient A (DOS: 7/6/2015), id. at 648;

- Patient A (DOS: 7/16/2015), id. at 659;

- Patient T (DOS: 11/14/2015), id. at 7988;

- Patient X/AE (DOS: 3/26/2015), id. at 1955;

- Patient X/AE (DOS: 4/25/2015), id. 1965;

- Patient X/AE (DOS: 6/26/2015), id. at 2015;

- Patient X/AE (DOS: 7/10/2015), id. at 2031;

- Patient X/AE (DOS: 7/27/2015), id. at 2053;

- Patient X/AE (DOS: 8/4/2015), id. at 2066;

- Patient Z (DOS: 8/6/2015), id. at 8416-19;

- Patient Z (DOS: 11/26/2015), id. at 1079;

- Patient AA (DOS: 10/2/2015), id. at 728, 8665;

- Patient DD (DOS: 12/8/2015), id. at 1183;

- Patient DD (DOS: 12/19/2015), id. at 1203; and

- Patient DD (DOS: 2/13/2016), id. at 1249.

### i. Plaintiff Submitted Several Claims for Administering B6 and B12 Injections that Defendants Denied

29.     The Current Procedural Terminology (CPT) code for an injection of Vitamin B6 is 84207.  Krominga Dec. ¶ 4.

30.     The CPT code for an injection of Vitamin B12 is 82607. Id.

31.     The CPT code for administering an injection is 96372. Id.

32.     Defendants denied Plaintiff's claims for administering B6 and B12 injections for the following ten claim events:

- Patient A (DOS: 4/4/2015), AR 570;

- Patient A (DOS: 7/6/2015), id. at 643;

- Patient A (DOS: 7/16/2015), id. at 546;

- Patient X/AE (DOS: 3/26/2015), id. at 1961;

- Patient X/AE (DOS: 6/26/2015), id. 1966-67;

- Patient X/AE (DOS: 7/10/2015), id. at 2018;

- Patient X/AE (DOS: 7/27/2015), id. at 8980-81;

- Patient X/AE (DOS: 8/4/2015), id. at 2065;

- Patient DD (DOS: 12/8/2015), id. at 1160; and

- Patient DD (DOS: 12/19/2015), id.

## 1. **Defendants Denied Plaintiff's Claims as to Patient A for Failing to Include Specific Information About the Injections**

33.     In an ATV Service Offering Engagement note dated October 8, 2015, Defendants provided the following rationale for denying some of Plaintiff's claims as to Patient A on the grounds that the services were not performed:

> There are no separate injection records submitted doc medication/dosage/specific route or signature of professional who may have administered medications or lab work submitted to support services rendered.

AR 514.  This note applied to Plaintiff's claims for administering B6 and B12 injections on the following dates, among others: DOS 4/4/2015, DOS 7/6/2015, and DOS 7/16/2015.  Id.

34.     The medical documentation purportedly supporting Plaintiff's claim for services provided to Patient A on April 4, 2015 and July 16, 2015 state that Vitamin B6 and B12 were given, without further detail.  Id. at 577, 659.  The documentation does not contain separate injection records, nor discuss specific dosage or route of B6 or B12 injections.  Id.

35.     The medical documentation purportedly supporting Plaintiff's claim for services provided to Patient A on July 6, 2015 is not legible.  Id. at 648.  It is not evident that the documentation mentions B6 or B12 injections.  Id.

36.     Dr. Krominga opines that the standard in the medical industry is to record all injections in a specific section and, for each injection, to include the name of the manufacturer, the dosage, the lot number and expiration date, the route of

administration, and the name of the person administering the injection.  Krominga Dec. ¶ 9.

**2. Defendants Denied Plaintiff's Claims as to Patient X/AE and Patient DD for Failing to "Support" the Injections, Without Further Explanation**

37.    In an ATV Service Offering Engagement note dated October 9, 2015, Defendants provided the following rationale for denying some of Plaintiff's claims as to Patient X on the grounds that the services were not performed:

> Notes do not support injection/labs performed.

AR 1946.  This note applied to Plaintiff's claim for administering B6 and B12 injections on the following dates, among others: DOS: 03/26/2015, DOS: 06/26/2015, DOS: 07/10/2015, DOS: 07/27/2015, and DOS: 8/4/2015.  Id. at 1945.  The note did not include further grounds for denial.  Id.

38.    The medical documentation purportedly supporting Plaintiff's claims for services provided to Patient X on March 26, 2015 is not legible.  Id. at 1955.  It is not evident that the documentation mentions B6 or B12 injections.  Id.

39.    The medical documentation purportedly supporting Plaintiff's claims for services provided to Patient X on June 26, 2015, July 10, 2015, July 27, 2015 and August 4, 2015 show that B6 and B12 injections were given, but do not include further detail.  Id. at 2015, 2031, 2053, 2066.

40.    In an ATV Service Offering Engagement note dated June 16, 2016, Defendants provided the following rationale for

denying some of Plaintiff's claims as to Patient DD on the grounds that the services were not performed:

> Notes do not support injection administered.

Id. at 1118. This note applied to Plaintiff's claims for administering B6 and B12 injections on the following dates: DOS: 12/08/2015 and DOS: 12/19/2015.

41. The medical documentation purportedly supporting Plaintiff's claims for services provided to Patient DD on December 8, 2015 and December 19, 2015 state that B-6 and B-12 injections were given for weakness and fatigue, without further detail. Id. at 1183, 1203.

42. There is no evidence in the administrative record that Defendants requested that Plaintiff provide specific dosage, route of administration, or the signature of the administering doctor in response to Plaintiff's claims as to Patient X/AE and Patient DD.

## ii. **Defendants Denied Several of Plaintiff's Claims for Providing Comprehensive Office Visits**

43. The CPT Code for a comprehensive office visit is 99215. Krominga Dec. ¶ 4.

44. Defendants denied Plaintiff's claims for providing a comprehensive office visit during the following 11 claim events:

- Patient A (DOS 4/4/2015), AR 570;

- Patient A (DOS: 7/3/2015), id. at 619-20;

- Patient A (DOS: 7/6/2015), id. at 643;

- Patient A (DOS: 7/16/2015), id. at 546

- Patient T (DOS 11/14/2015), id. at 8979;

- Patient X/AE (DOS 4/25/2015), id. at 1961, 1966;

- Patient X/AE (DOS 8/4/2015), id. at 2065;

- Patient Z (DOS 8/6/2015), id. at 1052[10];

- Patient Z (DOS 11/26/2015), id. at 1075.

- Patient AA (DOS 10/2/2015), id. at 8635.

- Patient DD (DOS 2/13/2016), id. at 1246.

45.     In an ATV Service Offering Engagement note dated October 8, 2015, Defendants provided the following rationale for denying some of Plaintiff's claims as to Patient A on the grounds that the services were not performed:

> Progress notes submitted have limited information.  Most do not contain subj c/o, no detailed history, no exam, assessment or treatment plan as well as notes do not contain a signature with credentials to support seen by billing provider.

Id. at 514.  This note applied to Plaintiff's claims for providing comprehensive office visits on the following dates: DOS: 4/4/2015, DOS: 7/3/2015, DOS: 7/6/2015, and DOS 7/6/2015.  Id.

46.     In an ATV Service Offering Engagement note dated June 4, 2016, Defendants provided the following rationale for denying Plaintiff's claim for providing a comprehensive office visit to Patient T on November 14, 2015:

> Clinical documentation does not support the required criteria of and office visit of

---

[10] Plaintiff also made a claim for services provided to Patient Z on August 6, 2015 under a service code not identified by either party.  Id.

> history, physical and medical management
> or that any medications/injections were
> given with record or flow sheet.

Id. at 7977.

47.    In an ATV Service Offering Engagement note dated October 8, 2015, Defendants provided the following rationale for denying some of Plaintiff's claims as to Patient X/AE on the grounds that the services were not performed:

> Notes do not support a comprehensive
> hx/exam/end mdm high complexity.
> Limited info on notes.  All notes do not
> appear to be signed so it is unclear who
> performed these services.

Id. at 1946.  This note applied to Plaintiff's claims for providing comprehensive office visits on April 24, 2015 and August 4, 2015. Id. at 1945.

48.    In an ATV Service Offering Engagement note dated June 4, 2016, Defendants provided the following rationale for denying Plaintiff's claim for providing a comprehensive office visit to Patient Z on August 6, 2015:

> Notes do not support comprehensive
> history; A comprehensive examination;
> Medical decision making of high complexity
> performed

Id. at 1046.

49.    In that same ATV Service Offering Engagement note, Defendants provided the following rationale for denying Plaintiff's other claim for services provided to Patient Z on August 6, 2015:

> Documentation does not support
> venipuncture, age 3 years or older,
> necessitating the skill of physician or other
> qualified health care professional (separate
> procedure) for diagnostic or therapeutic
> purposes (not to be used for routine
> venipuncture) performed . . . .

Id.

50.    In an ATV Service Offering Engagement note dated June 21, 2016, Defendants provided the following rationale for denying Plaintiff's claim for providing a comprehensive office visit to Patient Z on November 26, 2015:

> Notes do not support comprehensive
> history; A comprehensive examination;
> Medical decision making of high complexity
> performed.  Note does not appear to include
> legible signature with credentials[.]

Id. at 1090.

51.    In an ATV Service Offering Engagement note dated October 30, 2015, Defendants provided the following rationale for denying Plaintiff's claim for providing a comprehensive office visit to Patient AA on October 2, 2015:

> Notes do not support s [sic] comprehensive
> history; A comprehensive examination;
> Medical decision making of high complexity
> performed.  Note does not appear to include
> legible signature with credentials[.]

Id. at 737.

52.     In an ATV Service Offering Engagement note dated June 16, 2016, Defendants provided the following rationale for denying Plaintiff's claim for providing a comprehensive office visit to Patient DD on February 13, 2016:

> Notes do not supports [sic] comprehensive history; A comprehensive examination; Medical decision making of high complexity performed.  Note does not appear to include legible signature with credentials[.]

Id. at 1118.

### 3) **Defendants Denied Some of Plaintiff's Claims on the Grounds of Lack of Medical Necessity**

53.     For six of the claim events at issue, Defendants' stated ground for denial was that the service was not "accepted under recognized professional standards as appropriate and effective for the diagnosis, care or treatment of the disease or injury involved," or was "experimental or still under clinical investigation":

- Patient K (DOS: 12/29/2014), AR 1488;

- Patient T (DOS: 03/30/2015), id. at 7282-83;

- Patient T (DOS: 6/2/2015), id. at 7283;

- Patient AA (DOS: 8/9/2016), id. at 699;

- Patient AA (DOS: 8/22/2016), id. at 699; and

- Patient AA (DOS: 9/12/2016), id. at 719.[11]

---

[11] Defendants only denied some of Plaintiff's claim for services provided to Patient AA on September 12, 2016 on the grounds that the services were not medically necessary.  Defendants denied the remaining claims on the

### a. **Defendants' Denial of Plaintiff's Claim for Services Provided to Patient K**

54.　Plaintiff submitted to Defendants an operating report in support of his claim for services provided to Patient K on December 29, 2014.  AR 1490-92.

55.　Plaintiff made the following preoperative diagnoses of Patient K in the operating report:

> 1. Inflamed left Bartholin's cyst
>
> 2. Dyspareunia
>
> 3. Severe menometrorrhagia with large blood clots

Id. at 1490.

56.　Plaintiff's "Indication for Surgery" provided, in relevant part:

> The patient has been complaining of dyspareunia and pain in the left side of her labia for almost 2 months which lately became much worse and at the same time she has been complaining of severe vaginal bleeding on-and-off with large blood clots. Therefore the decision was made to perform marsupialization of left Bartholin's cyst along with an operative hysteroscopy and fractional dilatation and curettage.

---

grounds that the charges were not "reasonable and appropriate … because the global care includes visits for post-operative services."  Id.; see also Finding of Fact 67.

Id.

57.    Plaintiff described the operation as follows:

1.  Marsupialization of inflamed left
    Bartholin cyst

2.  Operative hysteroscopy

3.  Uterine polypectomy x 2

4.  Fractional dilatation and curettage

Plaintiff also provided a more detailed description of the procedure in the operating report.  Id. at 1490-91.

58.    In an ATV Service Offering Engagement note dated March 11, 2015, Defendants explained their decision to deny Plaintiff's claim as follows:

We reviewed information about your
condition and circumstances.  Based on the
information we have, coverage for the
surgery is denied.  There is limited
documentation to support medical necessity
of the surgical procedures.. [sic]  The
provider did not document a history or
exam.  There was no documentation of prior
conservative treatment tried and failed.

Id. at 1504.

59.    The operating report did not indicate whether Plaintiff performed a History and Physical (H&P), nor whether the patient had attempted treatment prior to surgery for any of the preoperative diagnoses.  Id. at 1490-92.

60.     During the claims administration process, Plaintiff did not submit any other evidence to Defendants demonstrating whether he performed an H&P or whether Patient K had attempted other treatment.

61.     Dr. Krominga opines in his declaration that:

> Prior to performing surgery, unless it is an emergency or there is no other option under the circumstances, it is standard in the industry to take a detailed history and attempt conservative treatment before performing surgery. All of this should be carefully documented in the patient's chart.

Krominga Dec. ¶ 11.

62.     Dr. Krominga further opines that:

> On the day of the elective surgery, it is standard in the industry to perform a brief history and physical exam before the surgery is performed to make sure the patient has had no recent change in health status that would preclude the surgery, such as an acute illness or acute blood loss . . . .

*Id.* ¶ 12.

63.     In response to Dr. Krominga's opinion, Plaintiff opines that conservative treatment "in the face of worsening pain and severe vaginal bleeding" for Patient K would have been inappropriate, and that an "[i]nfected big Bartholin cyst should be removed surgically." Dkt. 62-2 ¶ 6.

## b. **Plaintiff Does Not Offer Evidence to Show that the Services Provided to Patient T and Patient AA Were Medically Necessary**

64.    For two of the claim events referenced in paragraph 53, there is no evidence that Plaintiff submitted medical documents to Defendants supporting the claim during the claims administration process:

- Patient T (DOS: 03/30/2015); and

- Patient T (DOS: 6/2/2015).

65.    For three of the claim events referenced in paragraph 52, Plaintiff submitted to Defendants medical documentation purportedly supporting the claims:

- Patient AA (DOS: 8/9/2016), AR 701;

- Patient AA (DOS: 8/22/2016), id. at 717; and

- Patient AA (DOS: 9/12/2016), id. at 722.

66.    Plaintiff states in his declaration that all "medical services actions undertaken by me with respect to the unpaid claim events" at issue "were medically necessary, in my professional explanation."  Plaintiff does not provide further detail.  Samaan Dec. ¶ 6.

## 4) **Defendants Denied One of Plaintiff's Claims Because Plaintiff's Services Were Included as Part of a Global Care Surgery Event**

67.    For some of Plaintiff's claims for services provided to Patient AA on September 12, 2016, Defendants' stated ground for denial was that the Plan "provides coverage for charges that are reasonable and appropriate.  The charge for this service does not

meet this requirement . . . because the global care includes visits for post - operative services."  Id. at 719.

68.    Plaintiff submitted claims for providing surgical services to Patient AA on August 6, 2016, in addition to the claims he submitted for services provided on September 12, 2016.  Id. at 704-12.

69.    Plaintiff opines that "in his experience," it is not "reasonable and customary for surgeons in Southern California to perform follow-up visits free of charge."    Samaan Dec. ¶ 8.

### 5) Defendants Issued Payments for Some of the Claims Plaintiff Lists as "Unpaid"

70.    Plaintiff submitted three claims, requesting a total of $1,005.00, for services provided to Patient X/AE on February 18, 2017.  AR 8444.  Defendants paid all or a portion of each of these claims.  Id.  Defendants' payment totaled $415.00.  Id.

71.    Plaintiff submitted a claim for $875.00 for services provided to Patient X/AE on June 21, 2017.  Id. at 6852.  Defendants issued a payment of $820.00 for this claim.  Id.

### 6) Defendants Denied the Remainder of Plaintiff's Claims on Other Grounds

72.    For the following four claim events, Defendants' stated ground for denial was "[t]he information previously requested for this charge was never received":

- Patient A (DOS: 6/13/2015), AR 589;

- Patient X/AE (DOS: 8/23/2016), id. at 2122;

- Patient X/AE (DOS: 9/6/2016), id. at 2131; and

- Patient X/AE (DOS: 10/25/2016), id. at 2131-32.

73. Plaintiff opines that, in his experience, health insurers do not "follow a practice of requesting medical records of every patient office visit . . . ." Samaan Dec. ¶ 7.

74. For some of Plaintiff's claims for services provided to Patient X/AE on December 28, 2016, Defendants' stated ground for denial was that the Plan "provides benefits for covered expenses at the prevailing charge level made for the service in the geographical area where it is provided." AR 6692-93.

75. For the remainder of Plaintiff's claims for services provided to Patient X/AE on December 28, 2016, Defendants' stated grounds for denial was that the service was not billed at "the E & M [evaluation and management] level usually associated with the billed diagnosis code." Id.

## IV.   CONCLUSIONS OF LAW

### A.   Legal Standards

1. Under ERISA, "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1).

2. A claimant bears the burden of proving, by a preponderance of the evidence, that he is entitled to benefits under an ERISA plan "where the claimant has better—or at least equal—access to the evidence needed to prove entitlement." Estate of Barton v. ADT Sec. Servs. Pension Plan, 820 F.3d 1060, 1065-66 (9th Cir. 2016).

### B.   Assignments

3. Generally, only a participant or beneficiary may bring an action to recover benefits under an ERISA Plan. 29 U.S.C. § 1132(a)(1). However, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan

to the health care provider." Misic v. Bldg. Serv. Employees Health and Welfare Trust, 789 F.2d 1374, 1377 (9th Cir. 1986).

4.    Plaintiff's access to the evidence needed to show that his patients assigned him their right to Plan benefits is clearly better than Defendants' access. Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that his patients assigned him their rights to benefits.

5.    Plaintiff fails to meet his burden of showing that Patients LL, AK, and AR assigned their rights to benefits to him. Plaintiff's statement in his declaration that he "received a written assignment of benefits in connection with" each of the claims at issue, Samaan Dec. ¶ 3, absent additional evidence, is insufficient evidence for Plaintiff to meet this burden.

6.    Plaintiff fails to meet his burden of proving that he has standing to bring claims under the Plan for services provided to Patients LL, AK, and AR.

7.    Plaintiff meets his burden of showing that Patients A, K, T, X/AE, Z, AA, and DD assigned to him their rights to benefits under the Plan and that he has standing to bring claims under the Plan for services provided to these patients.

## C.    Denials of Benefits

8.    Under ERISA, a claims administrator "must provide a plan participant with adequate notice of the reasons for denial . . . ." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006).

9.     A plan administrator must provide the following information when making any "adverse benefit determination":

> (i) The specific reason or reasons for the adverse determination;

. . .

> (iii) A description of any additional material
> or information necessary for the claimant to
> perfect the claim and an explanation of why
> such material or information is necessary . .
> . .

29 C.F.R. § 2560.503–1(g)(1).

10.     A plan administer violates ERISA "[w]hen [the] administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level." <u>Abatie,</u> 458 F.3d at 974.

**1)  <u>The Court Reviews Defendants' Claims Determinations Under an Abuse of Discretion Standard</u>**

**a.  <u>The Terms of the Plan Call for Abuse of Discretion Review</u>**

11.     Because the Plan contains a discretionary clause, the terms of the Plan call for abuse of discretion review of Defendants' claims determinations.  <u>Williby v. Aetna Life Ins. Co.,</u> 867 F.3d 1129, 1133 (9th Cir. 2017).

12.     When reviewing a claims administrator's decision under an abuse of discretion standard, the "administrator's decision 'will not be disturbed if reasonable.'" <u>Stephan v. Unum Life Ins. Co. of America,</u> 697 F.3d 917, 929 (9th Cir. 2012) (quoting <u>Conkright v. Frommert,</u> 559 U.S. 506 (2010)).

13.     "This reasonableness standard requires deference to the administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be

drawn from the facts in the record.'" Id. (quoting Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011)).

14.    "This standard of review applies to the plan administrator's factual determinations as well as to her ultimate decision." Estate of Barton, 820 F.3d at 1070.

### b. ERISA Preempts California Insurance Code Section 10110.6 as Applied to the Plan

Plaintiff argues that the Court must review Defendants' claims determinations *de novo* because California Insurance Code section 10110.6(a) renders the discretionary clause in the Plan void and unenforceable.

15.    California Insurance Code section 10110.6(a) generally prohibits the enforcement of discretionary clauses contained in insurance policies:

> If a policy . . . that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy . . . or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

See also Williby, 867 F.3d at 1134 ("Section 10110.6 . . . bans the enforcement of discretionary clauses in California.")

16.    ERISA, however, contains three interrelated provisions that preempt state laws under certain conditions: the "pre-emption clause," the "saving clause," and the "deemer clause." FMC Corp. v. Holliday, 498 U.S. 52, 57–58, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990).

17.    The pre-emption clause provides that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).

18.    The saving clause exempts from the scope of the pre-emption clause "any law of any State which regulates insurance, banking, or securities," except as provided in the deemer clause. 29 U.S.C. § 1144(b)(2)(A).

19.    "[T]he deemer clause qualifies the scope of the saving clause . . . ." Williby, 867 F.3d at 1135.  "Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts." FMC Corp., 498 U.S. at 58.

20.    As the Supreme Court explained in FMC Corp, the deemer clause applies to ERISA plans that are self-funded.  The deemer clause exempts such plans from the saving clause, thereby relieving the plans from state insurance regulations:

> We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulate insurance" within the meaning of the saving clause.  . . . State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed

> to be insurance companies, other insurers,
> or engaged in the business of insurance for
> purposes of such state laws. On the other
> hand . . . [a]n insurance company that
> insures a plan remains an insurer for
> purposes of state laws "purporting to
> regulate insurance" after application of the
> deemer clause. The insurance company is
> therefore not relieved from state insurance
> regulation.

Id. at 61 (internal alteration omitted).

21.     Under ERISA, the term "employee benefit plan" includes an "employee welfare benefit plan." 29 U.S.C. § 1002(3). The term "employee welfare benefit plan" is defined to include:

> any plan, fund, or program . . . maintained
> by an employer or by an employee
> organization, or by both, to the extent that
> such plan, fund, or program was established
> or is maintained for the purpose of
> providing for its participants or their
> beneficiaries, through the purchase of
> insurance or otherwise, (A) medical,
> surgical, or hospital care or benefits, or
> benefits in the event of sickness, accident,
> [or] disability . . . ."

Id. § 1002(1).

22.     The Plan at issue is an employee welfare benefit plan for purposes of ERISA. Therefore, ERISA's preemption provisions apply to the Plan.

23.    Because the Plan is self-funded, ERISA's deemer clause exempts the Plan from the savings clause, thereby relieving the Plan "from state laws that 'regulat[e] insurance' within the meaning of the saving clause." FMC Corp., 498 U.S. at 61 (alteration in original). Therefore, "ERISA preempts § 10110.6 as applied to" the Plan. Williby, 867 F.3d at 1136.

## 2) The Court Will Not Consider Documents with the Bates Stamp SAMAANAETNA in Reviewing Defendants' Claims Determinations

24.    In reviewing an administrator's claims determination, a district court generally "review[s] only the evidence presented to the [claims administrator]." Jones v. Laborers Heath & Welfare Trust Fund, 906 F.2d 480, 482 (9th Cir. 1990).

25.    There are two exceptions to this general rule: "First, a district court may hear" evidence outside the administrative record "when the court must determine if a plan administrator's decision was affected by a conflict of interest." Banuelos v. Constr. Laborers' Trust Funds for S. Cal., 382 F.3d 897, 904 (9th Cir. 2004). Plaintiff does not argue that this exception applies.

26.    "Second, the court can hear evidence outside the administrative record when the standard of review of the administrative decision is de novo." Id. For the reasons stated above, the applicable standard of review of Defendants' claims determinations is abuse of discretion, not *de novo*.

27.    For these reasons, the Court will only review evidence presented to Defendants during the claims administration process in reviewing Defendants' claims determinations.

28.    Plaintiff failed to show that he presented the documents containing the Bates designation SAMAANAETNA to Defendants during the claims administration process. Therefore,

the Court will not consider these documents in reviewing Defendants' claims determinations.

### 3) **Defendants' Denials on the Grounds of Services Not Provided**

29.     To the extent Defendants denied a claim on the grounds that, based on the information received, the services were not provided, Plaintiff's access to the evidence needed to show that the ground for denial failed to comply with the terms of the Plan is better than, or at least equal to, Defendants' access.  Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that Defendants abused their discretion in denying any of Plaintiff's claims on this ground.

### a. **Plaintiff Fails to Meet His Burden of Showing that Defendants Abused Their Discretion in Denying A Claim Where Plaintiff Did Not Provide Supporting Medical Documentation**

30.     For several of the claim events at issue, there is no evidence that Plaintiff submitted to Defendants any medical documentation purportedly supporting his claims during the claims administration process.  Finding of Fact 24.  Defendants' decision to deny these claims was not illogical, implausible, or without support in inferences that may be drawn from the record.

31.     Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying these claims.

### b. **Defendants' Denials of Plaintiff's Claims for Administering B6 and B12 Injections**

32.     Defendants denied Plaintiff's claim for administering B6 and B12 injections to Patient X/AE on March 26, 2015, and to Patient A on July 6, 2015.  Defendants' decision was not illogical,

implausible, or without support in inferences that may be drawn from the record. Plaintiff submitted medical records in support of these claims, but the records were not legible and did not evidence that any B6 or B12 injections were administered.

33.    Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying these claims.

34.    Plaintiff submitted claims for administering B6 and B12 injections to Patient A on April 4, 2015 and July 16, 2015. Defendants' stated ground for denial in the EOB was that, based on the information received, the services were not provided. In the ATV Service Offering Engagement, Defendants further specified that the records did not include the dosage of the injection, the specific route of administration, or the signature of professional who purportedly administered the injections. This decision was not without support in inferences that may be drawn from the record. The records Plaintiff submitted stated that B6 and B12 injections were administered but did not provide further information. There is also no evidence Plaintiff provided Defendants with additional information about the injections after receiving Defendants' notification of the grounds for denial.

35.    Defendants' decision to deny these claims was also not implausible or illogical. Dr. Krominga opines that the industry standard is to record the dosage of the injection, the specific route of administration, and the signature of professional who purportedly administered the injections.[12] Plaintiff does not provide any evidence to rebut Dr. Krominga's testimony.

---

[12] Plaintiff objects to Dr. Krominga's opinion on several grounds. Dkt. 62-1 at 3. Plaintiff's objections are *overruled*. First, Dr. Krominga's opinion regarding the industry standard for documenting injections is relevant to Defendants' decision to deny Plaintiff's claims on the grounds that Plaintiff

36.    Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying these claims.

37.    Finally, Plaintiff submitted claims for administering B6 and B12 injections during the following claim events:

- Patient X/AE (DOS 06/26/2015);

- Patient X/AE (DOS 07/10/2015);

- Patient X/AE (DOS 07/27/2015);

- Patient X/AE (DOS 8/4/2015);

- Patient DD (DOS 12/8/2015); and

- Patient DD (DOS 12/19/2015).

For each of these claim events, Plaintiff submitted records purporting to show that B6 and B12 injections were administered to patients.  Unlike their claim decisions as to Patient A, Defendants' claims decisions as to these patients did not inform Plaintiff that he failed to provide specific information about the injections per the industry standard.  Defendants stated only that

---

failed to provide sufficient documentation.  Second, Dr. Krominga has provided sufficient information to show that he is qualified to give this opinion.  Fed. Rule Evid. 702; Findings of Fact 15-17.  Third, Dr. Krominga's opinion regarding the industry standard is not "speculation."  Fourth, Dr. Krominga's opinion in not objectionable as a "conclusion."  Rule 704 provides that "[a]n opinion is *not* objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a) (emphasis added).  Finally, the best evidence rule is not applicable.  The best evidence rule requires the proponent of a document to produce the original version to prove its contents, unless a statutory exception applies.  Fed. R. Evid. 1002; see also United States v. Lopez, 625 F.3d 1198, 1201 (9th Cir. 2010) ("[T]he rule requires not, as its common name implies, the best evidence in every case but rather the production of an original document instead of a copy.")  Dr. Krominga does not describe the contents of any document in his opinion.

Patient's records did not "support" the injections, without further explanation. In light of Plaintiff's submission of some medical documentation showing the injections were administered, Defendants' stated ground for denial was without support in inferences that may be drawn from the record. And to the extent Defendants intended to deny Plaintiff's claims for failing to include the specific dosage, route of administration, or other information about the purported injections, Defendant did not provide Plaintiff "adequate notice of the reasons for denial," <u>Abatie</u>, 458 F.3d at 974. Defendants did not inform Plaintiff of the "additional material or information necessary for [Plaintiff] to perfect the claim," 29 C.F.R. § 2560.503–1(g)(1)(iii), which precluded Plaintiff from "effectively responding to that rationale for denial," <u>Abatie,</u> 458 F.3d at 974.

38.     Plaintiff meets his burden of showing that Defendants abused their discretion in denying these claims under the Plan.

   c.   **<u>Plaintiff Fails to Meet His Burden of Showing that Defendants Abused Their Discretion in Denying Plaintiff's Claims for Providing a Comprehensive Office Visit</u>**

39.     Defendants denied several claims for providing a comprehensive office visit. Finding of Fact 44. For each of these claims, Defendants explained why the documentation Plaintiff submitted did not support those claims. Plaintiff does not show that Defendants' decisions were implausible, illogical, or without support in inferences that may be drawn from the record. Plaintiff does not explain what a comprehensive office visit entails under the Plan, does not explain why the services he provided on those dates satisfy the criteria for a comprehensive office visit, and does not explain why Defendants' determinations did not comply with the terms of the Plan.

40.     Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying these claims.[13]

### 4) **Plaintiff Fails to Meet His Burden of Showing that Defendants Abused Their Discretion in Denying Plaintiff's Claims on the Grounds of Lack of Medical Necessity**

41.     To the extent Defendants denied Plaintiff's claims on the grounds that the service was not accepted under recognized professional standards, was experimental, or was still under clinical investigation, Plaintiff's access to the evidence needed to show that the ground for denial failed to comply with the terms of the Plan is better than, or at least equal to, Defendants' access. Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that Defendants abused their discretion in denying any of Plaintiff's claims on these grounds.

### a. **Patient K**

42.     Plaintiff meets his burden of showing that the services he provided to Patient K on December 29, 2014 constitute "surgical services" for purposes of the Plan.

43.     Defendants determined that the surgery was not medically necessary because Plaintiff did not document a history and physical exam (H&P) prior to the surgery, and did not document whether there had been attempts at conservative treatment for Patient K's symptoms.  Defendants' decision to deny Plaintiff's claim on these grounds was not without support in inferences that may be drawn from the record. The only evidence Plaintiff submitted to Defendants during the claims process was

---

[13] For the same reason, Plaintiff fails to show that Defendants abused their discretion in denying Plaintiff's other claim for services provided to Patient Z on August 6, 2016.  See Findings of Fact 44, 49.

the operating report. Plaintiff did not document whether he performed an H&P, nor discuss any prior attempts at treatment for Patient K's symptoms in the operating report.

44. Nor was Defendants' decision to deny Plaintiff's claim implausible or illogical. Dr. Krominga opines that it is standard industry practice to attempt conservative treatment prior to electing to perform surgery and, prior to surgery, to perform an H&P and take a detailed history. Dr. Krominga's opinion lends support to Defendants' claim decision.[14]

45. After receiving notification of Defendants' claim denial, Plaintiff did not establish that he had performed an H&P, nor did he describe attempts at conservative treatment. This further lends support to Defendants' decision to deny Plaintiff's claim for lack of medical necessity.

46. In the operating report, Plaintiff described the history of K's symptoms which, in Plaintiff's opinion, indicated the need for surgery. Although the information contained in the report lends some support to Plaintiff's position that the surgery was medically necessary, it is insufficient to show that Defendants' contrary decision was implausible, illogical, or without support in

---

[14] Plaintiff objects to Dr. Krominga's opinion on several grounds. Dkt. 62-1 at 4. Plaintiff's objections are *overruled*. First, Dr. Krominga's opinion regarding the industry standard for steps taken prior to elective surgery is directly relevant to Defendants' decision to deny Plaintiff's claims on the grounds that the services were not medically necessary. Second, Dr. Krominga has provided sufficient information to show that he is qualified to give this opinion. Fed. Rule Evid. 702; Findings of Fact 15-17. Third, Dr. Krominga's opinion regarding the industry standard is not "speculation." Fourth, Dr. Krominga's opinion is not objectionable as a "conclusion." See Fed. R. Evid. 704(a). Finally, Dr. Krominga does not refer to the contents of any documents in his opinion, so the best evidence rule is not applicable. Fed. R. Evid. 1002.

inferences that may have been drawn from the record, as available to Defendants at the time.

47.    Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying Plaintiff's claims for services provided to Patient K on December 29, 2014.

### b. **Other Claims**

48.    Defendants determined that Plaintiff's services were not medically necessary for five additional claim events at issue. Finding of Fact 53.  For 2 of the claim events, Plaintiff did not submit medical documentation supporting the claim to Defendants during the claims administration process.  Defendants decision to deny these claims was not illogical, implausible, or without support in inferences that may be drawn from the record.

49.    For the other 3 claim events, Plaintiff did not describe the services he purportedly provided that allegedly entitle him to benefits under the Plan, nor did he explain why the service was medically necessary.  Plaintiff only cited to the medical documentation and stated in his declaration that all of his services were medically necessary, without further explanation.  That is insufficient to show that Defendants' decision to deny these claims was illogical, implausible, or without support in inferences that may be drawn from the record.

50.    Plaintiff fails to meet his burden of showing that Defendants abused their discretion in denying these claims.

**5) Plaintiff Fails to Show that Defendants Abused Their Discretion in Denying Plaintiff's Claims on the Grounds that the Services Were Included as Part of a Global Care Surgery Event**

51.     For one of the claim events at issue, Defendants denied Plaintiff's claims on the grounds that Plaintiff's services were post-operative services included as part of a global care event, for which Plaintiff submitted a separate claim.  Finding of Fact 67. Plaintiff has at least equal access to the evidence needed to show that this ground for denial failed to comply with the terms of the Plan.  Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that Defendants abused their discretion in denying Plaintiff's claims on this ground.

52.     Defendants' decision to deny Plaintiff's claims on this ground was not without support in inferences that may be drawn from the record.  Plaintiff submitted separate claims for providing surgery services to the same patient shortly before submitting the claim.

53.     Plaintiff's only supporting evidence is his own statement that, in his experience, surgeons generally do not provide post-operative services free of charge.  This is not sufficient to show that Defendants' decision was illogical or implausible.  Plaintiff fails to explain the basis of his assertion or provide additional supporting evidence.

54.     Plaintiff also fails to show that the Plan precludes Defendants from including post-operative services as part of a claim for "global care."

55.     Plaintiff fails to show that Defendants abused their discretion in denying this claim.

## 6) **The Court Will Not Consider Claims Where Defendants Made a Partial Payment**

56.     For three of the claim events at issue, Defendants paid part of Plaintiff's claims.  Findings of Fact 23, 70, 71.  As previously noted, the current phase includes only Plaintiff's claims for allegedly unpaid benefits.  The next phase includes Plaintiff's claims for allegedly underpaid benefits.  The Court will not consider these claims at this time.

## 7) **Plaintiff Fails to Show that Defendants Abused Their Discretion in Denying the Remainder of Plaintiff's Claims**

57.     For the remainder of the claim events at issue, Defendants' stated ground for denial was one of the following:

- Plaintiff failed to provide additional information requested by Defendants.

- Plaintiff billed the claim event at the incorrect service level, or the Plan only provides benefits for covered expenses at the prevailing charge level in the geographic area.

To the extent Defendants denied a claim on any of these grounds, Plaintiff's access to the evidence needed to show that the ground for denial failed to comply with the terms of the Plan is better than, or at least equal to, Defendants' access.  Therefore, Plaintiff has the burden of proving by a preponderance of the evidence that Defendants abused their discretion in denying any of Plaintiff's claims on theses grounds.

58.     Defendants denied four of Plaintiff's claim on the grounds that Plaintiff failed to provide additional information requested by Defendants.  Finding of Fact 72.  Plaintiff does not explain what information Defendants previously requested, does

not explain whether he complied with the request, and does not explain why Defendants' request failed to comply with the terms of the Plan. Plaintiff's statement that it is not the industry standard for insurers to request medical records in support of every patient visit is not sufficient to show that Defendants' request was illogical, implausible, or without support in inferences that may be drawn from the record.

59. Plaintiff did not argue that Defendants' stated grounds for denying Plaintiff's claims for services provided to Patient X/AE on December 28, 2107 failed to comply with the terms of the Plan, nor otherwise explain why Defendants abused their discretion in refusing to provide benefits. Findings of Fact 74, 75.

60. Plaintiff fails to meet his burden of proving that Defendants abused their discretion in denying all or a portion of the remainder of Plaintiff's claim events.

## D. The Court Will Not Determine the Amount Plaintiff is Entitled to Recover at This Time

61. Defendants ask that the Court decline to determine the amount Defendants owe Plaintiff for any claim for which Plaintiff is entitled to benefits. Defendants argue that the parties will brief how benefits are paid under the Plan during the next phase. Plaintiff did not adequately address this issue in his briefing. The Court declines to rule at this time and will permit the parties to address this issue during the next phase.

## V. CONCLUSION

For the reasons stated, Plaintiff meets his burden of showing that he is entitled to recover benefits for administering B6 and B12 injections during the following claim events: Patient X/AE (DOS: 06/26/2015, DOS: 07/10/2015, DOS: 07/27/2015, and DOS 8/4/2015); and Patient DD (DOS: 12/08/2015 and 12/19/2015).

Plaintiff fails to meet his burden of showing that he is entitled to recover benefits arising from any other claim event considered during this phase of the action.

IT IS SO ORDERED.

Date: August 30, 2019

Dale S. Fischer
United States District Judge