# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL F. SAMAAN, M.D.,<br>      Plaintiff,<br><br>      v.<br><br>AETNA LIFE INSURANCE COMPANY, et al.,<br>      Defendants. | No. 2:17-cv-01690-DSF (AGRx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW RE ALLEGEDLY UNDERPAID CLAIMS |

## I. INTRODUCTION

The parties agreed to trifurcate this matter.  On January 14, 2019, the Court issued an Order re Standing, Exhaustion of Administrative Remedies, and Contractual Limitations.  Dkt. 43.  On August 30, 2019, the Court issued Findings of Fact and Conclusions of Law regarding Plaintiff's claims that were completely unpaid by Defendants.

In this third phase, the parties ask the Court to decide whether Plaintiff is entitled to additional benefits for certain claims that he contends were underpaid according to the terms of the applicable Plan.

Having reviewed and considered the parties' briefs and the administrative record, the Court makes the following Findings of Fact and Conclusions of Law.

## II. BACKGROUND

Plaintiff is a medical doctor. Dkt. 53-1 (Samaan Dec.) ¶ 1. The parties agree that each patient at issue was a beneficiary of the Bank of America Plan (Plan), as described in the 2013 and 2016 Summary Plan Descriptions, and that Defendants were the claims administrators of the Plan. Dkt. 25 (FAC) ¶ 5; Dkt. 53 at 2; Dkt. 60 at 5-6. The parties agree that the Plan is governed by the Employee Retirement and Income Security Act of 1974 (ERISA). FAC ¶¶ 40-41; Dkt. 60 at 10.

## III. FINDINGS OF FACT

### A. Terms of the Plan

1. The Plan "applies to current U.S.-based employees" of Bank of America Corporation. AR 2306 (2013 Plan), 2582 (2016 Plan).

2. The Plan covers services for "medically necessary care," as described in relevant part below:

   > Unless otherwise noted the Plan[] cover[s] certain services and supplies for medically necessary care including:
   >
   > - Specialty and outpatient care
   > - Inpatient Services
   > - Surgical benefits

   Id. at 2372 (2013 Plan), 2628 (2016 Plan).

3. The Plan covers certain surgical services, as described in relevant part below:

   > **Surgical Benefits**
   >
   > Unless otherwise noted, the Plan[] cover[s] the following surgical services:
   >
   > - Surgical benefits cover surgery performed to treat an illness or injury; medical services by

2

>> surgeons [Medical Doctors (MD) or Doctors of Osteopathy (DO)], assistant surgeons, anesthesiologists, consultants (during and after an operation and any required second opinions); and medical services of podiatrists.
>
> . . .
>
> - Surgical services include:
>   - o A cutting procedure (except for cutting procedures of the mouth that are considered dental expenses . . . .)
>   - o Suturing
>
>   . . .
>
>   - o Preoperative and postoperative care

Id. at 2374 (2013 Plan).[1]

4. Pursuant to the Plan, an out-of-network provider may not recover more than the "reasonable and customary" fee for a service, as described in relevant part below:

> **Reasonable and customary (R&C)**
>
> Reasonable and customary (R&C) fees are those set each year by your medical plan as the fees that most doctors in a geographic area charge for particular services or procedures. R&C is based on available data resources of competitive fees in that geographic area.
>
> . . .

---

[1] The 2016 Plan contains substantially similar language. Id. at 2633. The Court does not find any relevant differences between the plans.

3

> If your doctor is out-of-network and charges more than the R&C fee, the Plan will not pay for the amount in excess of the R&C level. You are responsible for paying this difference if you are not using an in-network physician.

Id. at 2389 (2013 Plan).

> **Reasonable and customary** – A reasonable and customary fee is the amount of money that [Defendant] determines is the normal, or acceptable, range of payment for specific health-related service or medical procedure. Reasonable and customary fees operate within given geographic areas and the exact numbers of such fees depend on the location of service.
>
> . . .
>
> If your doctor is out of network and charges more than the allowed amount fee, the plan won't pay for any amount above the allowed amount. You're responsible for paying this difference which is shown on the explanation of benefits (EOB) you receive from your medical plan.

Id. at 2620 (2016 Plan).

5. The Plan contains the following clause granting Defendants discretion in making claims determinations:

> The Bank of America Corporation Corporate Benefits Committee, as plan administrator, has delegated to . . . insurance companies or other third-party claims administrators discretionary authority to determine eligibility for benefits and construe the terms of the applicable component plan and resolve all questions

4

>relating to claims for benefits under the component plan.

Id. at 2493 (2013 Plan), 2797 (2016 Plan).

### B. Plaintiff

6. Plaintiff Adel F. Samaan is a medical doctor practicing in Los Angeles County, whose primary practice area is gynecological surgery. Samaan Dec. ¶ 1.

7. Plaintiff is an out-of-network provider under the Plan. FAC ¶ 11.

### C. Defendants' Payments of Benefits

8. For all claims in this phase and covered by these Findings, Defendants paid Plaintiff for his services, but not at levels Plaintiff claims the beneficiaries/assignors were entitled to under the Plan.[2]

9. Defendants paid Plaintiff what Defendants found to be the "reasonable and customary" fee for the services provided within the relevant geographic area.

10. Defendants determined the "reasonable and customary" amount to be paid under the Plan by using the 80th percentile of payment level for a particular zipcode as provided by FAIR Health. Latham Decl. ¶ 16; Justo Decl. ¶¶ 4-5.[3]

---

[2] To the degree Plaintiff is attempting to recover for claims that were totally unpaid, those claims should have been litigated in an earlier phase and will not be considered in this one.

[3] Plaintiff characterizes the presentation of FAIR Health data as a "new reason for denial" and argues that Defendants should not be able to raise reasons for denial not specified during the administrative process. This is not a "new reason." The reason given for the rate paid was that it was the determined "reasonable and customary fee." The FAIR Health data is the reference source for determining that reasonable and customary fee.

5

11. FAIR Health collects data from health insurers and Medicare Advantage regarding dates of service, location by zipcode, procedure code and billed charges. Justo Decl. ¶¶ 4-5.

12. The Medicare Advantage data is only a small percentage of the total claims contained in the FAIR Health dataset. Justo Decl. ¶ 5.

13. For each procedure code, FAIR Health reports this data by "Geozips" – the first three digits of zip codes – and by percentile levels of charges. Payment at the 80th percentile level means that 80% of charges reported to FAIR Health were below that level. Justo Decl. ¶¶ 8-9.

14. The Plan provides payment limits for:

> Charges that exceed the allowed amount or negotiated fees when two or more surgical procedures are performed during the course of a single operation. The allowable amount varies based on the procedures performed, the number of operative fields and the number of physicians involved

AR 2381 (2013 Plan); AR 2646 (2016 Plan).

15. Defendants implemented this provision through its "Multiple Surgical Procedures Payment Policy." Latham Decl. ¶ 23; AR 9031-38.

16. The Multiple Surgical Procedures Payment Policy provides full reimbursement for the primary procedure, 50% reimbursement for the secondary procedure, and 25% for each additional procedure performed on the same day of service. Latham Decl. ¶ 23; AR 9032.

17. Defendants reduced payment on 18 claims at issue in this case under the Multiple Surgical Procedures Payment Policy. Latham Decl. ¶ 25.

18. Defendants also provided less than the requested reimbursement for certain claims that Plaintiff coded as "comprehensive office visits."

19. Defendants found Plaintiff had failed to justify reimbursement at the higher comprehensive office visit level, which requires significant time to be spent with the patient on a complicated medical issue. See Krominga Decl. (Dkt. 60) ¶ 10.

## IV. CONCLUSIONS OF LAW[4]

### A. Legal Standards

1. Under ERISA, "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1).

2. A claimant bears the burden of proving, by a preponderance of the evidence, that he is entitled to benefits under an ERISA plan "where the claimant has better—or at least equal—access to the evidence needed to prove entitlement." Estate of Barton v. ADT Sec. Servs. Pension Plan, 820 F.3d 1060, 1065-66 (9th Cir. 2016).

3. Under ERISA, a claims administrator "must provide a plan participant with adequate notice of the reasons for denial . . . ." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 974 (9th Cir. 2006).

4. A plan administrator must provide the following information when making any "adverse benefit determination":

> (i) The specific reason or reasons for the adverse determination;
>
> . . .

---

[4] Because these Conclusions of Law resolve all of the claims in the case, the Court does not need to decide any additional issues discussed by the parties in their briefs.

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary . . . .

29 C.F.R. § 2560.503–1(g)(1).

5. A plan administer violates ERISA "[w]hen [the] administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level." Abatie, 458 F.3d at 974.

## B. Standard of Review

### 1. The Terms of the Plan Call for Abuse of Discretion Review

6. Because the Plan contains a discretionary clause, the terms of the Plan call for abuse of discretion review of Defendants' claims determinations. Williby v. Aetna Life Ins. Co., 867 F.3d 1129, 1133 (9th Cir. 2017).

7. When reviewing a claims administrator's decision under an abuse of discretion standard, the "administrator's decision 'will not be disturbed if reasonable.'" Stephan v. Unum Life Ins. Co. of America, 697 F.3d 917, 929 (9th Cir. 2012) (quoting Conkright v. Frommert, 559 U.S. 506 (2010)).

8. "This reasonableness standard requires deference to the administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" Id. (quoting Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011)).

9. "This standard of review applies to the plan administrator's factual determinations as well as to her ultimate decision." Estate of Barton, 820 F.3d at 1070.

8

### 2. ERISA Preempts California Insurance Code Section 10110.6 as Applied to the Plan

10. Plaintiff argues that the Court must review Defendants' claims determinations *de novo* because California Insurance Code section 10110.6(a) renders the discretionary clause in the Plan void and unenforceable. But the Court has previously determined that ERISA preempts § 10110.6 as applied to the Plan. Dkt. No. 69, Concl. of Law ¶¶ 15-23.

## C. Plaintiff Failed to Show He Was Entitled to Additional Payments

### 1. Plaintiff Failed to Meet His Burden of Showing that Defendants Abused Their Discretion in Determining the Reasonable and Customary Fee

11. Plaintiff claims the use of FAIR Health data to determine the reasonable and customary fee was an abuse of discretion because (1) FAIR Health is not mentioned in the Plan, (2) FAIR Health data is "driven by Medicare prices," and (3) Defendants did not disclose their use of FAIR Health data in making their determination.

12. It was not an abuse of discretion to use FAIR Health data in determining the reasonable and customary fee.

13. Defendants were not barred from using FAIR Health data merely because it was not explicitly mentioned in the Plan. No particular source of data is explicitly listed in the Plan. The Plan states that "R&C is based on available data resources of competitive fees in that geographic area." FAIR Health is one source of such data.

14. Plaintiff does not provide any evidence for his assertions that FAIR Health data is "driven by" Medicare data or that use of

    FAIR Health "in essence pays the medical provider a percentage of Medicare."[5]

15. Plaintiff also does not provide any authority for the proposition that Defendants were required to cite FAIR data explicitly in their explanations for the reduced payments of fees. Nor does he argue that he or any of the Plan members themselves ever requested that Defendants explain their calculation of the reasonable and customary fee.

16. Consistent with other courts to consider the issue, the Court finds that Defendants were not required to disclose the methodology used to calculate the reasonable and customary fee. "Courts which have considered the scope of an ERISA fiduciary's disclosure obligations in similar contexts have overwhelmingly concluded that they do not extend to disclosure of UCR methodology or physician reimbursement schedules, and that courts should not add to the specific disclosure requirements that ERISA already provides." In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 921 (C.D. Cal. 2012) (internal quotation marks omitted) (collecting cases); In re Aetna UCR Litig., 2015 WL 3970168, at *15 (D. N.J. 2015); cf. Zack v. McLaren Health Advantage, Inc., 340 F. Supp. 3d 648, 665–66 (E.D. Mich. 2018) (administrator required to disclose fee methodology when specifically requested during the claims process and the methodology used diverged from common industry practice).

17. Plaintiff also does not provide any evidence of what he contends a reasonable and customary fee is other than the amount he charges. One doctor's charges cannot establish the reasonable

---

[5] Plaintiff also assumes, but does not support with any argument, the proposition that consideration of Medicare data is illegitimate under the Plan.

10

and customary fee for the relevant procedure and geographic area.

18. Even if Plaintiff had established that Defendants' reasonable and customary fees were questionable – which he has not – the absence of any valid competing amounts for the reasonable and customary fees would prevent the Court from finding that Defendants' abused their discretion in setting the amount of those fees.

   **2. Plaintiff Failed to Meet His Burden of Showing Defendants Abused Their Discretion in Applying a Multiple Procedure Reduction to Some of Plaintiff's Billed Charges**

19. The Multiple Surgical Procedures Payment Policy was authorized by the Plan.

20. The Court rejects Plaintiff's unsupported assertions that Defendants' application of the Multiple Surgical Procedures Payment Policy was improper.

21. There is no legal support for Plaintiff's argument that his lack of awareness of the Multiple Surgical Procedures Payment Policy renders it improper.

22. Plaintiff provides no support for his assertion that "Aetna has no right to impose Multiple Procedure reductions as a repricing devise [sic] where the Bank of America Plan claims are concerned[.]" Opening Br. at 12.

   **3. Plaintiff Failed to Meet His Burden of Showing Defendants Abused Their Discretion in Not Paying the Full Amount for the Alleged Comprehensive Office Visits**

23. Defendants reduced payment on several claims for providing a comprehensive office visit. For each of these claims, Defendants explained why the documentation Plaintiff submitted did not support those claims.

11

24. Plaintiff fails to meet his burden of showing that Defendants abused their discretion in their determination of the payment amounts on these claims.

25. Plaintiff does not show that Defendants' decisions were implausible, illogical, or without support in inferences that may be drawn from the record.

26. Plaintiff does not explain why the services he provided satisfy the Plan criteria for a comprehensive office visit and does not explain why Defendants' determinations did not comply with the terms of the Plan.

## V. SUMMARY OF FINDINGS

Defendants did not abuse their discretion by paying less than the submitted amount of Plaintiffs' claims.[6]

IT IS SO ORDERED.

Date: August 21, 2020

Dale S. Fischer
United States District Judge

---

[6] In phase 2, the Court found that certain claims submitted by Plaintiff should have been paid but deferred ruling on the exact amount to be paid until this round of briefing. From the briefs, it appears that the only dispute about these claims is whether they should be paid in full as submitted by Plaintiff or at the rate of the 80th percentile of the relevant FAIR Health data category. That general dispute was resolved by these findings and the claims should be paid as calculated by Defendants.